FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2009 MAR 18 A 10: 28

| | | |
|---|---|---|
| UNITED STATES EX REL FUNK, | : | Case No. 1:09cv296 |
| | : | |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | **FILED UNDER SEAL** |
| | : | pursuant to 31 U.S.C § 3730(b)(2) |
| MISSION ESSENTIAL PERSONNEL, LLC | : | |
| | : | |
| Defendant | : | |

## COMPLAINT

Qui Tam Relator, Paul Funk ("Relator" or "Mr. Funk") brings this action in the name of the United States Government for false claims that were submitted or caused to be submitted to the United States Government by Defendant Mission Essential Personnel, LLC ("MEP" or "Defendant") as follows:

### INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America ("United States") arising from false statements and claims made and presented by the Defendant, Mission Essential Personnel, LLC ("MEP"), its agents, employees, and/or co-conspirators in violation of the Federal Civil False Claims Act, 31 U.S.C.§§ 3729 et seq., as amended ("the Act"). The violations consist of fraudulent misrepresentations relating to the quantity and quality of services performed under a contract with the United States.

2. The Act provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the United States for payment or approval is liable for a civil penalty of not less than $5,500 and not more than $11,000 for each such claim submitted or



paid, plus three times the amount of the damages sustained by the United States. Liability attaches both when a defendant knowingly seeks payment that is unwarranted from the United States and when false records or statements are knowingly created or caused to be used to conceal, avoid or decrease an obligation to pay or transmit money to the United States. The Act allows any person having information regarding a false or fraudulent claim against the United States to bring an action for himself ("Relator") and for the United States and to share in any recovery.

3. Based on those provisions, Relator, Paul Funk, seeks to recover damages and civil penalties arising from the Defendant, MEP's, presentation of false records, claims, and statements to the United States and its agents in connection with MEP's claims for payment for services required to be performed under a contract with the United States military. MEP's actions were designed to maximize profits illegally at the government's expense. MEP's fraud includes the following:

    a. MEP fraudulently presented claims to the United States and received therefrom payment for services that were not rendered under an MEP contract with the United States military (Contract No. W911W4-07-D-0010);

    b. MEP fraudulently presented claims to the United States and received payment therefrom for services that were not rendered in accordance with an MEP contract with the United States military (Contract No. W911W4-07-D-0010); and

    c. MEP fraudulently presented claims to the United States and received reimbursement of per diem amounts that were not allotable under an MEP contract with the United States military (Contract No. W911W4-07-D-0010).

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the subject matter of this action pursuant to both

28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

5. The Court has personal jurisdiction over the Defendant, MEP, pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process and because MEP can be found, transacts business, and presented the actionable false claims to the United States in the Eastern District of Virginia.

6. Venue is proper in the Eastern District of Virginia pursuant to 31 U.S.C. § 3732(a) because MEP can be found, transacts business, and presented the actionable false claims to the United States in the Eastern District of Virginia.

7. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed under seal and will remain under seal for a period of at least 60 days from its filing date, and shall not be served upon the Defendant until after the Court so orders.

## PARTIES

8. Relator, Paul Funk, is a United States citizen and a resident of Reston, Virginia.

9. Defendant, Mission Essential Personnel, LLC ("MEP"), is an Ohio limited liability company headquartered at 4343 Easton Commons, Suite, 100, Columbus, Ohio 43219. MEP has "major offices" in Chantilly, Virginia and Lorton, Virginia. MEP may be served with process by serving its registered agent, C.T. Corporation System, 1300 East 9th Street, Cleveland, Ohio 44114.

## FACTS

10. Mission Essential Personnel, LLC ("MEP") represents that it is a "global

professional services firm" headquartered at 4343 Easton Commons, Suite, 100, Columbus, Ohio 43219.

11.     MEP further represents that it "supports state and federal agencies, NGOs, international organizations, and global customers with linguists and interpreters, analysts, training, and program management in intelligence, defense, peace support, emerging markets and law enforcement operations."

12.     MEP further represents that it has more than 4,000 employees and has "major offices" in Chantilly, Virginia; Lorton, Virginia; Augusta, Georgia; Columbus, Georgia; Fayetteville, North Carolina; Linthicum Heights, Maryland; and Mainz, Germany.

13.     On September 7, 2007, MEP was awarded Contract W911W4-07-D-0010 ("Contract") by the United States government for the "Management and Support of Translation and Interpretation Services" for "Operation Enduring Freedom-Afghanistan (OEF-A)." *See* Exhibit A. The stated purpose of the Contract is to "provide management services necessary to rapidly and securely recruit and deploy foreign language interpretation and translation services in support of United States Army, its Unified Commands…attached forces, combined forces, and joint elements who [are] executing the military mission known as Operation Enduring Freedom—Afghanistan (OEF-A)…" *Id.*, para. 1.0.

14.     The initial Contract amount is $414,415.823.00. On information and belief, MEP anticipates that the initial Contract amount will be increased by $200,000,000.00.

15.     Under the Contract, MEP is required, as part of its "pre-screening" process, to recruit linguist candidates with "certain skills." *Id.*, at para. 2.1.2. Specifically, Category I ("CAT

4

I") linguists—linguists locally hired or hired from a region outside the Area of Operations and who do not require a security clearance—must have an Interagency Language Roundtable ("ILR") proficiency of level 4 to 5 in the Specified Contract Required Language ("SCRL") and an ILR level 2+ proficiency in English. Category II ("CAT II") linguists—United States citizens who have been screened by the U.S. Army Counterintelligence personnel—must have an ILR proficiency of level 4 to 5 in the SCRL language and an ILR level 2+ proficiency in English. Category III ("CAT III") linguists—generally, U.S. citizens who possess a "Top Secret" security clearance—must have an ILR level 3 in the SCRL language and be fluent in English. *Id.*, at para. 2.1.2.2.

16.     Under the Contract, MEP is required to screen applicants to ensure compliance with these language proficiency requirements. Specifically, MEP is required to administer testing to linguist applicants to ensure that they possess the necessary interpreting and translation skills, including the following: interpretation into and from English and the SCRL language(s); written translation of general and technical material into and from English and the SCRL language(s); interpreting aptitude; transcription of aural SCRL language material into written form; and advising supported commanders and organizations on the cultural and ethnic significance of documents. *Id.*, at para 2.1.2.1.

17.     Under the Contract—in order to ensure Contract compliance—MEP is required to "implement a complete quality control program that identifies potential and actual problem areas in providing requirements of the contract…and the results of corrective actions taken throughout the life of the contract." *Id.*, at para. 2.5.1.

5

18. Under the Contract, MEP is only entitled to reimbursement by the United States "for those candidates that successfully complete the screening process or for failed candidates where the contractor has properly completed and documented the required contractor pre-screening..." The Contract did not provide MEP with a mechanism to qualify for deployment and obtain payment for the services of candidates who failed the language test. *Id.*, at para. 2.1.2.5.

19. Paul Funk was employed by MEP as Director of MEP's Pre-Deployment Processing Center in Linthicum, Maryland from approximately December 2007 until December 13, 2008.

20. As Director of MEP's Pre-Deployment Processing Center, Mr. Funk was responsible for supervising the language proficiency testing of prospective applicants recruited by MEP to serve as translators and interpreters in support of the United States military's "Operation Enduring Freedom" in Afghanistan under Contract No. W911W4-07-D-0010. As a result of his job responsibilities, Mr. Funk has direct and independent knowledge of all matters set forth in paragraphs 20 through 31, *infra*.

21. Throughout the term of the Contract, MEP knowingly and systematically defrauded the United States by presenting explicit and/or implicit false claims to the United States' Contracting Authority (Headquarters, INSCOM) for payment.

22. Specifically, throughout the term of the Contract, MEP knowingly employed as CAT II linguists and deployed to Afghanistan individuals who do not meet the ILR proficiency requirements in the SCRL language(s) (i.e. level 4 to 5) required by the Contract.

6

23. In the period November 18, 2007 to August 18, 2008, approximately 180 (over 80%) of the MEP linguist applicants failed to meet the ILR proficiency testing requirements in the SCRL language(s) but were, nevertheless, processed, employed and deployed by MEP to Afghanistan. *See* Exhibit B.

24. MEP's deployment to Afghanistan as interpreters and translators of numerous individuals who do not meet the Contract's language proficiency requirements has seriously undermined "Operation Enduring Freedom."

25. Despite the fact that these applicants failed to meet the Contract's language-proficiency testing requirements—which are material contractual terms—MEP knowingly presented to the United States false claims for payment and/or reimbursement of the linguists' services and expenses and received payment thereto.

26. Since MEP compensates its linguists deployed to Afghanistan at the annual rate of approximately $210,000.00 for their work in theater, MEP's fraudulent billing of the United States is substantial.

27. Throughout the term of the Contract, MEP knowingly and systematically defrauded the United States by presenting claims to the Contracting Authority (Headquarters, INSCOM) for payment of services not provided under the Contract.

28. Specifically, MEP only required its linguists to work approximately two (2) hours per day (i.e. 10 hours/week) while the linguists were assigned to MEP's Document and Media Exploitation Cell ("DOMEX") in Linthicum, Maryland. Nevertheless, MEP knowingly presented claims to the United States government for payment of the linguists' services at the rate of eight

7

(8) hours per day (i.e. 40 hours/week) for their DOMEX work.

29. Since MEP paid its linguists at the rate of approximately $1,923.00 bi-weekly (i.e. $50,000.00 annually) for their DOMEX work, MEP's fraudulent billing of the United States is substantial.

30. Throughout the term of the Contract, MEP knowingly and systematically defrauded the United States by implicitly certifying to the Contracting Authority (Headquarters, INSCOM) that the company had complied with the material provisions of the Contract requiring quality control—including the contractual provision requiring documentation of failed candidates—when, in fact, it had not so complied

31. Specifically, although the Contract requires MEP to "implement a complete quality control program that identifies potential and actual problem areas in providing requirements of the contract...and the results of corrective actions taken throughout the life of the contract..." MEP knowingly failed to implement a quality control program. MEP's deliberate failure to implement the contractually-required quality control program was designed to enable and, in fact, enabled the company to defraud the United States government of tens of millions of dollars.

32. Throughout the term of the Contract, MEP knowingly and systematically defrauded the United States by presenting false claims to the Contracting Authority (Headquarters, INSCOM) for per diem payments that were not allowable under the Contract.

33. Specifically, MEP presented claims to the Contracting Authority for payment of full or partial per diem rates for its interpreters and translators under circumstances where such

8

per diem payments were not allowable under the Contract. A partial list of such fraudulent payments is attached hereto as Exhibit C.

## COUNT ONE
### (False Claims Act – Presentation of False Claims)
### 31 U.S.C. §§ 3729(a)(1)

34. Relator incorporates by reference the allegations made in Paragraphs 1 through 33 of this Complaint as though set forth herein in full.

35. Through the acts described above, MEP and its agents and employees knowingly presented and caused to be presented to an officer or employee of the United States Government a false and/or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

## COUNT TWO
### (False Claims Act – Making or Using False Record or Statement to Cause Claim to be Paid)
### 31 U.S.C. §§ 3729(a)(2)

36. Relator incorporates by reference the allegations made in Paragraphs 1 through 35 of this Complaint as though set forth herein in full.

37. Through the acts described above and otherwise, MEP and its agents and employees knowingly made, used, and/or caused to be made or used false records and statements in violation of 31 U.S.C. §§ 3729(a)(2) in order to get such false and fraudulent claims paid and approved by the United States Government.

## COUNT THREE
### (False Claims Act – Making or Using False Record or Statement to Conceal, Avoid and/or Decrease Obligation to Repay Money)
### 31 U.S.C. §§ 3729(a)(7)

38. Relator incorporates by reference the allegations made in Paragraphs 1 through 37 of this Complaint as though set forth herein in full.

39. Through the acts described above, in violation of 31 U.S.C. § 3729(a)(7), MEP and its agents and employees knowingly made, used, and caused to be made or used false records and statements to conceal, avoid, and/or decrease MEP's obligation to repay money to the United States Government that MEP improperly and/or fraudulently received. MEP also failed to disclose material facts that would have resulted in substantial repayments to the United States.

### COUNT FOUR
### (False Claims Act – Conspiracy)
### 31 U.S.C. § 3729(a)(3)

40. Relator incorporates by reference the allegations made in Paragraphs 1 through 39 of this Complaint as though set forth herein in full.

41. Through the acts described above and otherwise, MEP entered into a conspiracy or conspiracies to defraud the United States by getting false and fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(3). MEP also conspired to omit disclosing or to actively conceal facts which, if known, would have reduced government obligations to it or resulted in repayments from it to government programs.

42. MEP, its agents, and its employees have taken substantial steps in furtherance of those conspiracies, *inter alia*, by preparing false records, by submitting claims for reimbursement to the Government for payment or approval, and by directing its agents and personnel not to disclose and/or to conceal its fraudulent practices.

43. The United States, unaware of MEP's conspiracy or the falsity of the records,

statements and claims made by MEP, its agents, and employees, and as a result thereof, have paid and continue to pay millions of dollars that they would not otherwise have paid. Furthermore, because of the false records, statements, claims, and omissions by MEP and its agents and employees, the United States has not recovered federal funds from the Defendants that otherwise would have been recovered.

## PRAYER FOR RELIEF

WHEREFORE, Relator Paul Funk requests that judgment be entered against Defendant Mission Essential Personnel, LLC ordering that:

1. That Defendant cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;

2. That the Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's actions, as well as a civil penalty against each Defendant of not less than $5,500 and not more than $11,000, for each violation of 31 U.S.C. § 3729;

3. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal Civil False Claims Act;

4. Relator be awarded all costs and expenses of this action, including attorneys' fees, pursuant to 31 U.S.C. § 3730(d);

5. Defendant be enjoined from concealing, removing, encumbering or disposing of assets that may be required to pay the civil monetary penalties imposed by the Court;

6. Defendant disgorge all sums by which it has been enriched unjustly by its

wrongful conduct; and

7. The United States and Relator recover all such other relief as the Court deems just and proper.

Respectfully submitted,

By: _____
Mark Hanna
Virginia Bar Number 45442
MURPHY ANDERSON PLLC
1701 K St. NW, Suite 210
Washington, DC 20006
(202)223-2620
(202)223-8651 (Fax)
mhanna@murphypllc.com
*Local counsel for relator*

Scott Newar
700 Louisiana, 25th Floor
Houston, Texas 77002
(713) 220-9155
(713) 223-9319 (Fax)
newar@newarlaw.com
*Lead counsel for relator*
*Pro hac vice forthcoming*