**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES *EX REL* PAUL FUNK, *Plaintiff*, v. MISSION ESSENTIAL PERSONNEL, LLC, *et al.* *Defendants*. | Case No.: 1:09-CV-00296-LMB-JFA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CEIBA ENTERPRISES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant Ceiba Enterprises, Inc., dba Gracor Language Services, Inc., by and through its undersigned counsel, hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).

**STATEMENT OF FACTS**

Qui Tam Realtor, Paul Funk ("Funk") filed his First Amended Complain on April 1, 2010 alleging that Mission Essential Personnel, LLC ("MEP"), Language Learning Enterprises, Inc. ("LLE") and Ceiba Enterprises, Inc ("Gracor") violated the False Claims Act. According to Funk, MEP was awarded a contract by the United States to provide "Management and Support of Translation and Interpretation Services" for "Operation Enduring Freedom-Afghanistan (OEF-A)." (Plaintiff's First Amended Complaint ¶ 16). According to Funk, the contract required MEP to recruit certain categories of linguists (with the categories defined by the contract) for

deployment to Afghanistan.  (*Id*. at ¶¶ 18-20).  The contract requires the deployed linguists to meet certain language proficiency levels depending on their contractually defined category.  (*Id*).  To ensure that the deployed linguists actually met the contract's language proficiency requirements, MEP was required to implement screening programs to test the linguists' abilities to interpret and translate selected target languages into English.  (*Id*. at ¶ 21).  In order to assist MEP in the execution of its government contract to provide linguists to the Army, MEP itself entered into contracts with Ceiba and LLE to perform language proficiency testing.  (*Id*. at ¶ 12).

Under the terms of the contract, MEP is entitled to payment from the government for linguist candidates who successfully complete the screening process and are deployed, or for those linguist candidates who fail the screening process where MEP has properly completed and documented the screening.  (*Id*. at ¶ 23).  Funk contends that MEP failed to adequately test the language proficiency of the linguists recruited and deployed to Afghanistan.  (*Id*. at ¶ 29). Specifically, Funk alleges that the proficiency screenings for the linguists were conducted over the telephone, rather than in person, which resulted in the recruitment of individuals who were not actually qualified linguists under the contract.  (*Id*. at ¶ 30).  Funk failed to cite any authority that telephonic interviews of linguists were deviations from industry standards.  Nevertheless, Funk contends, again without citing to any appropriate authority, that oral testing of linguists, in person, is the standard accepted testing practice in the translation service industry and is the only way to prevent fraud by the person being tested.  (*Id*). Funk contends that the telephone screening of linguists resulted in violations of the False Claims Act because it resulted in MEP presenting claims to the government for linguists whom MEP knew were not sufficiently qualified under the contract's requirements.  (*Id*. at ¶ 26).

2

Funk claims that between November 18, 2007 and June 20, 2008, approximately 28% of linguists tested failed to meet the proficiency requirements defined by the contract. Nevertheless, Funk claims that MEP falsely represented to the government that these failed linguists had passed. (*Id*. at ¶ 28). To make it appear as if the failed linguists had passed, Funk claims that MEP falsified written test results for linguists tested to make it appear as if individuals who had failed the testing had actually passed so that they could be supplied to the Army for deployment and MEP could obtain payment from the government. (*Id*. at ¶ 32). Funk also alleges that MEP allowed linguists who had failed the testing (or cheated) to take the proficiency exams repeated times until they had enough knowledge of the test to pass. (*Id*. at ¶ 34). In this way, Funk contends that MEP was able to assign linguists a passing grade and submit them for payment even though they did not actually meet the contractual proficiency requirements. (*Id*). Funk claims that MEP "knowingly presented to the United States false claims for payment and reimbursement of the linguists' services and expenses and received payment thereto," for those linguist applicants that had failed to pass the contract's language proficiency requirements. (*Id*. at ¶ 39).

As to Defendant Gracor, Funk indicates that it conducted the telephone oral proficiency interviews in concert with MEP and Defendant LLE. (*Id*. at ¶ 30). Funk also claims that, in conspiracy with MEP, Gracor participated in the falsification of the written test results for linguists. (*Id*. at ¶ 32). Funk also claims that Gracor conspired with MEP to allow failed linguists to repetitively take the tests to achieve a false passing grade. (*Id*. at ¶34). Funk provides no further details regarding what the alleged conspiracy between Gracor and the other defendants entailed, nor does he identify any specific actions taken by Gracor in furtherance of that conspiracy. Moreover, other than generally alleging that Gracor participated in MEP's

alleged bad acts as a "conspirator," Funk does not identify any actions which Gracor itself undertook which he claims are in violation of the act.

## ARGUMENT

In his First Amended Complaint, Funk fails to allege with particularity any acts committed by Defendant Gracor. Instead, he outlines several actions undertaken by Defendant MEP that he claims violate the False Claims Act and then, without more, claims Gracor and LLE joined in MEP's violations as "conspirators." Funk does not provide any specifics or details regarding how or when Gracor participated in the alleged conspiracy, nor does he point with particularity to any individual act of Gracor's which he claims violates the Act.

Because Funk is required to plead violations of the Act with particularity under Fed. R. Civ. P. 9(b), his failure to identify any individual act undertaken by Gracor that violates the Act is fatal to his claims. Funk cannot allege violations of the Act against MEP and then simply "lump" Gracor into those allegations without providing any hint as to those acts done by Gracor which Funk claims trigger liability. *See e.g. United States ex rel. Barrett v. Johnson Controls, Inc., et al.*, Slip Op. 3:01-CV-164-M 2003 U.S. Dist LEXIS 5973 (N.D. Tex. April 9, 2003); *United States ex rel. Bender v. North American Tel. Inc., et al*, 686 F. Supp. 2d 46, (D.D.C. 2010). Rule 9 requires that Funk put Gracor on notice as to its individual actions which he claims violate the Act. Since the First Amended Complaint fails to point with particularity to any action undertaken by Gracor, it must be dismissed for failure to state a claim.

### I. STANDARD OF REVIEW

When considering a motion to dismiss brought under Rule 12(b)(6), a district court reviews the facts relating to a claim in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While the Court is required, for purposes of a motion

to dismiss, to accept as true the facts as plead in the complaint, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). Moreover, the Court need not accept as true "legal conclusions couched as a factual allegation." *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007). For a claim to survive a motion to dismiss, it must, "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 *quoting Twombly*, 550 U.S at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Additionally, because claims made under the False Claims Act involve allegations of fraud, they are subjected to the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure, which requires that "the circumstances constituting fraud" be stated "with particularity." Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999)(applying Rule 9 to False Claims Act complaint). To satisfy the pleading requirements of Rule 9, a False Claims Act complaint must "describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Wilson v. Kellog Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). These facts are often referred to as the "who, what, when, where, and how of the alleged fraud." *Id*. By requiring a plaintiff to plead circumstances of fraud with particularity, and not by way of general allegations, Rule 9(b) screens, "fraud actions in which all the facts are learned through discovery after the complaint is filed." *Harrison*, 176 F.3d at 789.

## II. COUNT ONE OF THE FIRST AMENDED COMPLAINT MUST BE DISMISSED AS TO GRACOR BECAUSE FUNK DOES NOT ALLEGE THAT GRACOR PRESENTED A FALSE CLAIM FOR PAYMENT OR APPROVAL

Funk's first allegation against Gracor is that it violated 31 U.S.C. § 3729(a)(1) (amended and recodified as 31 U.S.C. § 3729(a)(1)(A)) by presenting false claims. Funk does not set forth the factual basis for his allegations in Count One of his First Amended Complaint. Instead, he simply recites that "Defendants MEP, LLE, Gracor, and their agents and employees knowingly presented and caused to be presented to an officer or employee of the United States Government a false and/or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)." (First Amended Complaint ¶ 52). This allegation is nothing more than a legal conclusion and bare assertion that Gracor violated the False Claims Act by presentment of a false claim. Consequently, the Court need not accept the allegation as true and need not consider it. Instead, it is necessary to examine the rest of the facts set forth in the First Amended Complaint to see if they sufficiently allege the presentment of a false claim by Gracor.

31 U.S.C. § 3729(a)(1)(A) imposes liability for knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval. Courts interpreting this section of the false claims act have generally held that the statute requires exactly what it says for liability to attach – the actual presentment of a false claim. *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009). In this case, however, Funk does not make any allegation that Gracor presented, or caused to be presented, any false claims, either to the government or to the primary contractor MEP. While Funk does allege that MEP presented false claims to the government for payment because it knew it was seeking payment for linguists who had not passed the required proficiency testing, Funk does not identify a single claim anywhere in the

Amended Complaint that Gracor made on any entity or individual. For this reason, Count One of the Amended Complaint must be dismissed for failure to state a claim as to Gracor.

Moreover, even had Funk made the general allegation that Gracor submitted a false claim, that allegation must be stated with particularity under Rule 9 because presentment of the claim is an essential element of the alleged fraud. A claim for a violation of 31 U.S.C. § 3729(a)(1)(A) cannot be sustained where the plaintiff provides a detailed explanation of an underlying scheme to defraud or overcharge the government but then fails to specifically identify false claims that were actually presented in furtherance of that scheme. *Hopper*, 588 F.3d at 1325-26. If "Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in … [a] conclusory fashion." *Id*. To meet the particularity requirement of Rule 9(b), a plaintiff must provide specifics regarding the "who, what, where, when, and how" of at least one false claim that a defendant presented. *Id.* at 1327. Consequently, meeting the requirements of Rule 9(b) requires a plaintiff to provide specifics, "details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, [and] the amount of money charged to the government." *United States ex rel. Gagne v. City of Worcester, et al.*, 565 F.3d 40, 46 (1st Cir. 2009). Here, however, Funk provides no specific information regarding any claim submitted by Gracor; he does not identify the claim, its date, the amount charged, or the content of the claim. Instead, he generally alleges only that MEP submitted claims. For this reason, Count One of Funk's Amended Complaint should be dismissed for failure to plead with the particularity Rule 9(b) requires.

### III. COUNT TWO OF THE AMENDED COMPLAINT MUST BE DISMISSED AS TO GRACOR BECAUSE FUNK FAILS TO IDENTIFY THE ALLEGEDLY FALSE RECORDS AND STATEMENTS WITH SUFFICIENT PARTICULARITY

As with Count One of the First Amended Complaint, Funk does not set forth any particular facts which support his claims, and simply alleges that "Defendants MEP, LLE, Gracor, and their agents and employees knowingly made, used, and/or caused to be made or used false records and statements in violation of 31 U.S.C. § 3729(a)(2)…"  As with Count One, the Court must look to the remainder of Funks Complaint to determine what facts, if any, support Count Two because the claims actually set forth in Count Two are mere legal conclusions, which the Court should disregard.

31 U.S.C. § 3729(a)(2) (recodified as 31 U.S.C. § 3729(a)(1)(B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Unlike 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B) does not require a defendant to actually present a false claim for liability to attach. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)(superseded in part by statute on other grounds).  Rather, liability attaches whenever a defendant makes or uses a false record or statement that is material to some claim.  Nevertheless, a plaintiff must still plead the elements of a 31 U.S.C. § 3729(a)(1)(B) claim with particularity, just as with other claims under the False Claims Act.

To meet the requirements of Rule 9(b), a plaintiff who wishes to pursue a claim that alleges a defendant violated the False Claims Act by making false records or statement must provide details "on what the alleged 'false, misleading and fraudulent pretenses and representations' consisted of, who made them, or when they were made."  *City of Worcester*, 565 F.3d at 47-48 (claim that defendants submitted falsified time sheets insufficient under Rule 9(b)

without more).  Where a plaintiff claims a defendant violated the Act by falsifying documents or making false statements in documents, he is required under Rule 9(b) to identify "which documents he bases these allegations on, when they were created and submitted, and what they contain."  *United States ex rel. Conrad v. Grifols Biologicals, Inc., et al,* Slip Op. RDB 07-3176, 2010 U.S. Dist. LEXIS 68775 (D. Md. July 9, 2010).  Moreover, it is particularly noteworthy to emphasize that allegations that "lump all defendants together" and fail to identify the separate wrongdoing of any particular defendant do not satisfy Rule 9(b).  *United States ex rel. Barrett v. Johnson Controls, Inc., et al*., Slip Op. 3:01-CV-164-M2003 U.S. Dist LEXIS 5973 (N.D. Tex. April 9, 2003); *United States ex rel. Bender v. North American Tel. Inc., et al*, 686 F. Supp. 2d 46, (D.D.C. 2010) (complaint must make specific allegations against each individual defendant rather than collective allegations against "each of the above-named defendants").  Where the claim is that a defendant made false statements, a plaintiff must therefore identify specific false statements that are attributable to a particular defendant to satisfy the rule.  Here, Funk fails on both counts.

With respect to Gracor, Funk identifies three potential areas where a false record or statement could have been made.  Funk alleges that "MEP, singularly and in conspiracy with Defendants LLE and Gracor" falsified the ILR written test results for linguists tested, permitted candidates who failed the linguistics tests to retake the examination multiple times ensuring a passing grade that did not reflect their true proficiency levels, and conducted oral proficiency interviews over the telephone, rather than in person.  (First Amended Complaint ¶¶ 30, 32, 34).

In the first instance, Funk does not identify what actions Gracor undertook with respect to the alleged false testing results, retesting, or oral examinations.  Instead, Funk simply alleges that these allegedly fraudulent activities were done by MEP and that Gracor "in conspiracy with"

9

MEP participated in the scheme. Such a general statement does not meet the pleading standard of Rule 9(b) because it fails to specifically allege with any particularity what actions Gracor itself undertook that resulted in the creation of a false record or statement. For example, Funk alleges that test results were falsified, but he completely fails to identify which of the parties allegedly falsified the records. Under Rule 9, Funk cannot allege a particular scheme against MEP and then attach liability to Gracor as well simply by "lumping in" Gracor with MEP. Instead, Funk must identify with particularity what false records or statements Gracor itself made, used, or caused to be made. Funk's failure to identify with particularity any actions individually attributable to Gracor which he claims violate the Act is fatal to his claim.

Additionally, even if Funk had identified with particularity some allegedly fraudulent action Gracor undertook, he has failed to identify with particularity the actual false records or statements which Gracor allegedly made or used. Funk first alleges that the defendants falsified tests results related to linguists that they tested. But, Funk has not identified with any particularity what these "false test results" consisted of, who made them, when they were made, or for which linguists the results were falsified. The closest Funk comes is indicating that approximately 28% of the tested linguists failed the proficiency testing between November 18, 2007 and June 20, 2008 and that MEP falsely represented to the government that they had passed. (First Amended Complaint ¶ 28). Funk does not, however, identify when the alleged misrepresentations involving these linguists were made, how they were made (i.e. in some form of document or invoice), or even who made them.[1] Funk's claims regarding the alleged retesting are similar. Funk completely fails to identify with any particularity when this fraudulent

---

[1] Given that Exhibit B, which Funk relies on to support his claim, indicates the failure rate in question, this Exhibit B cannot be the false document Funk complains of. Instead, the allegedly falsified records must have been made at some later date in some other format which Funk does not reveal.

10

retesting occurred, who conducted it, what linguists were tested, or when and to whom the allegedly false record or statement indicating the individuals in question had passed the testing was made.

Funk's final allegation, that defendants conducted the oral linguistics testing over the telephone, does not allege a false statement. While Funk does indicate that this testing allowed the defendants to claim that unqualified individuals were qualified under the contract – again, at some later date and under some other circumstances not identified – Funk does not claim that any defendant ever misrepresented the fact that the interviews were being conducted over the telephone. Because the contract between MEP and the Army (which Funk attaches to his Complaint as Exhibit A) did not require some particular form of testing, conducting the interviews over the phone in and of itself did not amount to a misrepresentation or false statement. MEP was not, for example, implicitly certifying to the government that it had interviewed each candidate in person because the terms of the contract did not specify in person interviews. (*See* Funk's Exhibit A § 2.1.2). At most, Funk's allegation concerning the phone interviews is that MEP breached its contract by failing to design a system that would ensure accurate testing of candidates. The False Claims Act, however, does not apply to simple breaches of a government contract devoid of any falsehood. *United States ex rel. Wilson v. Kellog Brown & Root, Inc., et al.*, 525 F.3d 370, 378 (4th Cir. 2008).

In Sum, Count Two of the First Amended Complaint should be dismissed pursuant to Rule 9(b) as to Gracor because Plaintiff has failed to allege with particularity any false record or statement which was made or used by Gracor.

### IV. COUNT THREE OF THE AMENDED COMPLAINT FAILS TO ALLEGE A CONSPIRACY WITH THE REQUIRED PARTICULARITY AND MUST BE DISMISSED

Count Three of Funk's First Amended Complaint alleges a conspiracy claim pursuant to 31 U.S.C. § 3729(a)(3)(recodified 31 U.S.C. 3729(a)(1)(C)).  To demonstrate a conspiracy under the False Claims Act, a plaintiff must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement."  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009).  The particularity requirements of Rule 9(b) requires that a plaintiff who seeks to prove a conspiracy under the False Claims Act must "plead with particularity the conspiracy as well as the overt acts…taken in furtherance of the conspiracy."  *Id*. Here, however, the Amended Complaint is utterly devoid of any facts that indicate that Gracor and others agreed to commit violations of the False Claims Act and, if they did, what that agreement was.

In the Amended Complaint, Funk alleges no more than that "MEP, singularly and in conspiracy with Defendants LLE and Gracor," falsified the ILR written test results for linguists tested and permitted linguists who had failed the test to retake it multiple times to achieve a false passage rate.  (First Amended Complaint ¶¶ 32, 34).  To these allegations, Funk adds the boilerplate legal conclusions that Gracor, and the other defendants, entered into a conspiracy to defraud the United States by getting false claims paid, conspired to omit or actively conceal facts which, if known, would have reduced the Government's obligations to the Defendants, and took substantial steps in furtherance of the conspiracy by "preparing false records, by submitting claims for reimbursement to the Government for payment or approval, and by directing their agents and personnel not to disclose and/ or to conceal their fraudulent practices."  (*Id*. at ¶¶ 56 – 58).

At no point in the Amended Complaint does Funk identify in any way what the substance of the alleged unlawful agreement between Gracor and the other Defendants was. Nor does Funk indicate who entered into the agreement, when the agreement was entered into, or what acts, particularly, were done in furtherance of the agreement. Instead, Funk alleges a general conspiracy and states generally that test results were "falsified" and that the defendants allowed some individuals to retake tests. These general allegations—both in terms of the conspiracy and the alleged acts in furtherance of it – do not allege the "who, what, when, where, and how" of the conspiracy and fail to satisfy Rule 9(b)'s requirement that Funk plead with particularity.

Finally, Count Three of the Amended Complaint must be dismissed because it fails to state a "plausible" claim pursuant to Rule 12(b)(6). A naked assertion of a conspiracy, without more, gets a complaint close to the line of stating a plausible claim for relief, but cannot survive a motion to dismiss without some "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Here, Funk's conspiracy claim not only fails to satisfy the particularity requirements of Rule 9(b) but is, at base, nothing more than a bald assertion that a "conspiracy" existed. Funk has plead no facts that demonstrate any agreement between Gracor and the other defendants to defraud the government. In fact, he has not even identified which particular conspiratorial acts Gracor undertook in advancement of the alleged common scheme, nor has he identified any circumstances (such as meetings, conference calls, e-mails, etc.) that evidence any opportunity for agreement. Even assuming, for the sake of argument, that Funk had plead a violation of the False Claims Act by Gracor and the other defendants with the required particularity, without some fact that indicates an agreement, his claim of conspiracy is merely "possible" not "plausible." Similar to the conspiracy under discussion in *Twombly*, multiple defendants can commit violations of the Act under the same contract with no agreement

13

whatsoever. *Id*. (allegations of parallel conduct in antitrust conspiracy context close to the line of plausibility but insufficient without more). An allegation that multiple defendants committed violations of the Act under the same contract gets a complaint for conspiracy close to the realm of "plausible" but where, as here, there is not some fact plead which tends to indicate an actual agreement to violate the Act, the complaint must fail. *See e.g. Kanneganti*, 565 F.3d at 194.

### V.  COUNT FOUR OF THE AMENDED COMPLAINT FAILS TO ALLEGE A VIOLATION OF THE REVERSE FALSE CLAIMS ACT AGAINST GRACOR AND MUST BE DISMISSED

Funk's final claim against Gracor[2] is for a violation of 31 U.S.C. § 3729(a)(7)(recodified 31 U.S.C. § 3729(a)(1)(G), otherwise known as the reverse False Claims Act. Under 31 U.S.C. § 3729(a)(1)(G), a defendant violates the act if he "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." Unlike the remainder of the Act, which focuses on false statements made for the purpose of getting the Government to pay a defendant, the reverse False Claims Act focuses on false statements made by a defendant to avoid or decrease payments owing to the government.

In the first instance, Funk's claims under 31 U.S.C. §3729(a)(1)(G) must fail because they are premised on the same factual allegations as the other claims against Gracor in the Amended Complaint. As already discussed, those claims must fail because Funk has failed to allege violations of the Act against Gracor with sufficient particularity under Rule 9(b). Specifically, Funk has failed to allege any actions which Gracor itself undertook (instead

---

[2] Count Five of the Amended Complaint alleges a claim against MEP – Funk's former employer – for violations of the Act for retaliation. Funk does not assert a retaliation claim against Gracor, with whom he was never employed.

lumping Gracor in with MEP without distinction) and has not provided the required particulars regarding any false statements or reports Gracor allegedly made. Given that Count Four of the Amended Complaint is based on these same facts, which are not plead with sufficient particularity, it must fail as well and for the same reasons.

Moreover, the reverse portion of the Act imposes liability in the context of payments of money or property a defendant owes to the government. It does not deal, as is the case here, with payments made from the government to an individual, which are covered by the remaining portions of the Act. *United States ex rel. Marcy v. Rowan Co.*, 520 F.3d 384, 390 (5th Cir. 2008)(in reverse False Claims Act suit, there is no improper payment by the government to a defendant, but rather there is an improper reduction in the defendants liability to the government). For this reason, to recover under the reveres portion of the Act, the United States must show that:

> it was owed a specific, legal obligation at the time the alleged false record or statement was made, used, or caused to be made or used. The obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the False Claims Act, a defendant must have had a present duty to pay money or property that was created by statute, regulation, contract, judgment, or acknowledgment of indebtedness. The duty, in other words, must have been an obligation in the nature of those that give rise to actions of debt at common law for money or things owed.

*United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997); *see also American Textile Mfrs. Inst., Inc. v. The Limited, Inc*., 190 F.3d 729, 735 (6th Cir. 1999)(obligation must be fixed and definite at the time of the claim to create liability under reverse False Claims Act).

Here, however, Funk has alleged no fixed definite obligation on the part of Gracor to make a payment of money or property to the government which, in making false statements, Gracor sought to avoid. Funk does not allege, for example, that the MEP contract contained a

15

provision that would have triggered an obligation to repay the government in the event of a mistaken claim. Instead, Funk's allegation is essentially that false statements made by the defendants allowed them to keep funds they had improperly obtained from the government without discovery. Such an allegation, however, potentially states a claim under the remaining portions of the Act; it does not trigger liability under the reverse portion of the act in the absence of allegations that the contract created a fixed obligation to make a payment to the government at the time the alleged misrepresentations were made. "A government contractor's potential liability for fines or sanctions that might be imposed at some indefinite point in the future, in some indefinite amount, is not an 'obligation to pay' under section 3729(a)(7)." *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 508 (S.D. Tex. 2003).

### CONCLUSION

For the forgoing reasons, Defendant Ceiba Enterprises, Inc., dba Gracor Language Services, Inc., respectfully requests that the Court dismiss Plaintiff's claims against it for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for failure to plead with the particularity required by Fed. R. Civ. P. 9(b).

July 16, 2010							Respectfully submitted,

							  /s/ Clinton R. Shaw
							Clinton R. Shaw, Jr. (VSB #37498)
							JORDAN, COYNE & SAVITS, LLP
							1100 Connecticut Avenue, N.W.
							Suite 600
							Washington, DC 20036
							(202)496-2824
							(202) 496-2800 (facsimile)
							c.shaw@jocs-law.com

							*Counsel for Defendant*
							*Ceiba Enterprises, Inc.*