# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES *ex rel* PAUL FUNK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:09-cv-00296-LMB-JFA |
| | ) | |
| | ) | |
| MISSION ESSENTIAL PERSONNEL, | ) | |
| LLC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MISSION ESSENTIAL PERSONNEL'S MOTION TO DISMISS

Mission Essential Personnel, LLC ("MEP"), respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the First Amended Complaint. Although an MEP insider who already has amended his complaint once, the Relator Paul Funk (the "Relator") fails to plead any action that can survive under the False Claims Act (the "FCA"). First, stripped of its conclusory assertions, as required by the Supreme Court in *Twombly* and *Iqbal*, the Relator fails to state a plausible claim against MEP as required by Rule 8(a) of the Federal Rules of Civil Procedure with respect to Counts I through V. Second, the Relator fails to plead the particularized circumstances of the alleged fraud required by Rule 9(b) of the Federal Rules of Civil Procedure with respect to Counts 1 through IV. Third, the Relator is not authorized under the *qui tam* provisions of the FCA either to recover under the common law theory of unjust enrichment or to secure disgorgement or injunctive relief as against MEP. Accordingly, the case should be dismissed with prejudice, in its entirety.

I.    **Introduction**

A.    **Procedural Posture**

On March 18, 2009, approximately three months after he left the employ of MEP, the Relator commenced a sealed action under the *qui tam* provisions of the FCA, alleging that MEP had defrauded the United States under a federal contract.  (Docket No. 1).  On April 1, 2010, the Relator submitted his First Amended Complaint against MEP and added defendants Language Learning Enterprises, Inc ("LLE") and Ceiba Enterprises, Inc., dba Gracor Language Services, Inc. ("Gracor").  On June 2, 2010, the Court unsealed the matter.  (Docket Nos. 21 & 22).  The United States has thus far declined to intervene in the case.  (Docket No. 14).

B.    **Factual Background**

On September 7, 2007, the United States awarded MEP contract number W911W4-07-D-0010 for the Management and Support of Translation and Interpretation Services Operation Enduring Freedom – Afghanistan (OEF-A) (the "Contract") (First Amended Complaint ¶ 16 and Ex. A) ("Am. Compl.").  The purpose of the Contract is to provide management services necessary to rapidly and securely recruit and deploy foreign language interpretation and translation services in support of various commands and forces carrying out military operations in Afghanistan.  (Am. Compl. ¶ 16 & Ex. A).

Under the Contract, MEP is required to recruit specific categories of linguists for deployment to Afghanistan.  (Am. Compl. ¶¶ 18-21 & Ex. A).  The Contract requires MEP to screen the recruited candidates to determine if they meet contractually specified oral and written language proficiency standards (Am. Compl. ¶¶ 18-21 & Ex. A), but does not specify how MEP is to accomplish these evaluations.  (*See* Ex. A at ¶¶ 2.1.2 at 11-13).

MEP employed the Relator under the Contract to be the Director of MEP's Pre-Deployment Processing Center ("PDPC"), in Linthicum, Maryland, from December 6, 2007 to December 15, 2008. (Am. Compl. ¶ 24). The Relator alleges that as Director he was responsible for supervising the language proficiency testing of the linguist candidates, which he contends afforded him direct knowledge of the allegations in the Complaint. (Am. Compl. ¶ 25).

The Relator alleges that under the Contract MEP is entitled to reimbursement for candidates who successfully complete the screening process and for failed candidates where MEP properly completes and documents the screening process. (Am. Compl. ¶ 23 & Ex. A at ¶ 2.1.2.5 at 14). The Relator contends that the Contract does not provide for payment to MEP for candidates who do not pass the "minimum linguist testing requirements." (Am. Compl. ¶ 23). He further contends that the Contract contains no mechanism for MEP to qualify for deployment and be paid for the services of a candidate who fails language testing. (Am. Compl. ¶ 23).

## 1.    Linguistic Proficiency Screening

The Relator alleges, without furnishing details as to times, names, or other specifics, that MEP defrauded the United States by submitting "explicit and implicit" false claims for a "significant portion of linguists MEP supplied" and deployed who lacked contractually required language skills. (Am. Compl. ¶ 26). The Relator asserts five general theories by which MEP allegedly defrauded the United States with respect to linguistic proficiency screening. (Am. Compl. ¶¶ 26-39). In each instance, however, the Relator fails to provide details of MEP's alleged misconduct.

First, the Relator alleges that MEP recruited and deployed unqualified linguists to Afghanistan. (Am. Compl. ¶¶ 26-27). Citing only to an unidentified and unexplained spreadsheet (Am. Compl. Ex. B), the Relator contends that 28 percent of the linguists hired and tested between November 18, 2007 and June 20, 2008 failed to meet contractual language

3

requirements but that MEP falsely represented to the Government that they had met the requirements.  (Am. Compl. ¶ 28 & Ex. B).  The Relator does not allege who made such representations, to whom they were communicated, what was communicated (explicitly or implicitly), or when, where, or how the representations were made.  The Relator does not allege which, if any, of the linguists listed on Exhibit B were deployed, or whether and if so when MEP falsely invoiced and received payment from the Government for them.  The Relator cites to no documents that were submitted in support of any claims submitted to the Government regarding these linguists.

Second, the Relator contends that MEP, in conjunction with defendants LLE and/or Gracor, failed to adequately test the candidates.  (Am. Compl. ¶ 29).  The Relator alleges that in-person interviews are the industry standard and that defendants' use of telephonic Oral Proficiency Interviews was inadequate and resulted in MEP's deploying numerous unqualified linguists.  (Am. Compl. ¶ 30).  The Relator does not identify any Contract provision requiring MEP to conduct in-person oral screening interviews or to employ any particular process to test the oral proficiency of the linguists and does not identify any of the deficient linguists, when they allegedly were tested or deployed, or when MEP allegedly falsely invoiced or was compensated for them.  The Relator cites to no documents that were submitted in support of any claims to the Government regarding these linguists.

Third, the Relator alleges that MEP, on its own and in conspiracy with the other defendants, falsified written test results to make it appear that failing linguists had passed their written proficiency tests.  (Am. Compl. ¶ 32).  The Relator alleges that MEP subsequently deployed those linguists to Afghanistan.  (Am. Compl. ¶ 32).  The Relator fails to allege any specific instance of any written test score being falsified or of a linguist being deployed based upon a falsified test score.  The Relator fails to identify who falsified test results, when or how it

4

occurred, or how such test results were used by MEP to secure payment from the Government. The Relator cites to no documents that were submitted in support of any claims to the Government regarding these linguists.

Fourth, the Relator alleges that MEP, on its own and in conspiracy with the other defendants, permitted linguists that had failed or cheated on written proficiency tests to retake the written exam on multiple occasions. (Am. Compl. ¶ 34). The Relator asserts that allowing a linguist to retake a written proficiency test more than once provides that linguist the "test knowledge" to pass the test and erroneously appear to meet the proficiency standard when they in fact were not qualified. (Am. Compl. ¶ 34). The Relator contends that MEP employed this "ruse" to allow the deployment of unqualified linguists to Afghanistan. (Am. Compl. ¶ 34). The Relator fails to cite to any Contract provision that proscribes the reevaluation of a linguist's written skills; fails to allege a single instance of a linguist cheating on a test or of a linguist being allowed to retake a test after he failed or cheated on a written language test; fails to allege a single instance where MEP deployed, falsely invoiced, or was compensated for such a linguist; and fails to allege anything about the MEP personnel allegedly involved in such actions. The Relator cites to no documents that were submitted in support of any claims to the Government regarding these linguists.

Fifth, the Relator alleges that MEP failed to perform language proficiency testing for a particular category of linguist in Afghanistan. (Am. Compl. ¶ 36). The Relator fails to elaborate at all on this general allegation in terms of who was involved and when or how it occurred. The Relator fails to allege that MEP falsely invoiced or was compensated for any such linguists and cites to no documents that were submitted in support of any claims to the Government regarding these linguists.

### 2.    The DOMEX And DOCEX Programs

The Relator alleges, without any details, that MEP falsely invoiced the Government for document and media exploitation services that were not authorized by the Contract. (Am. Compl. ¶¶ 42, 44). The Relator alleges that, at the Linthicum, Maryland facility where he served as Director, MEP assigned linguists to work on a Document and Media Exploitation program ("DOMEX" program) when it was not authorized under the Contract. (Am. Compl. ¶¶ 41-45). The Relator asserts that MEP falsely sought payment for linguist services by misrepresenting that they devoted eight hours per day to DOMEX work when they in fact only devoted two hours per day to DOMEX work. (Am. Compl. ¶¶ 41-42). The Relator also asserts that MEP assigned linguists to work on a Document Exploitation program ("DOCEX" program) at Fort Benning, Georgia. The Relator contends that MEP falsely sought reimbursement for these services where the DOCEX program work was not authorized under the Contract. (Am. Compl. ¶¶ 44-45). The Relator fails to provide any specifics whatsoever about these alleged false claims -- no who, what, when, where or how -- and does not allege that MEP created or submitted any documents to support these alleged false claims.

### 3.    Quality Control Program

Under the Contract, MEP is required to implement a quality control program "that identifies potential and actual problem areas . . . and the results of corrective actions taken . . . ." (Am. Compl. ¶¶ 22, 47). The Relator alleges that in submitting claims, MEP implicitly certified its compliance with the quality control requirements. (Am. Compl. ¶ 46). The Relator further alleges that MEP failed to implement a quality control program so that it could falsely bill the Government for linguist services. (Am. Compl. ¶ 48). The Relator does not contend that MEP falsely billed the Government for a quality control program that it did not develop, nor does the Relator allege any facts regarding how MEP's alleged contract defalcation was reflected in any

invoice or resulted in any improper payment by the Government to MEP.  The Relator cites to no documents that were submitted in support of any claims to the Government regarding this allegedly false claim.

**4.   Per Diem Payments**

The Relator alleges that MEP invoiced the Government for per diem payments that were not allowed under the Contract.  (Am. Compl. ¶ 49).  The Relator presents a list of what he contends are per diem payments requested and paid to linguists.  (Am. Compl. ¶ 50 & Ex. C). He offers no explanation or detail regarding these general allegations, such as who was involved, what was erroneous about the per diem payments, what invoices MEP submitted to the Government that were incorrect, or what the Government erroneously paid to MEP.  The Relator cites to no documents that were submitted in support of any claims to the Government regarding this allegedly false claim.

**5.   Retaliatory Discharge**

The Relator alleges that MEP improperly retaliated and terminated his employment for engaging in activity protected under the FCA.  (Am. Compl. ¶ 67).  Although the Relator broadly alleges that he engaged in repeated questioning, investigating, and reporting of improper practices in connection with an FCA matter (Am. Compl. ¶¶ 64-65), and that MEP knew or should have known his actions were in furtherance of such an action (Am. Compl. ¶ 66), the Relator's factual allegations in the Amended Complaint are more mundane.  The Relator alleges that he reported to his superiors (i) during May 2008 that language oral proficiency testing was defective and resulted in MEP recruiting linguists who could not speak English (Am. Compl. ¶ 31) and that MEP had failed to perform language testing for certain linguists in Afghanistan (Am. Compl. ¶ 37); (ii) during the spring of 2008 that there were falsified test results (Am. Compl. ¶ 33); and (iii) during June or July 2008 that there were instances of cheating on the

7

written tests (Am. Compl. ¶ 35).  The Relator also alleges that MEP attempted to force him to resign his position by making him work "excessive hours," refusing to hire "sufficient staff," and making "trumped-up false complaints to MEP's Human Resources Department."  (Am. Compl. ¶ 68).  Nowhere does he allege he told anyone about an FCA action.

## II.     Argument

### A.     Counts I Through V Of The Amended Complaint Should Be Dismissed Because The Relator Failed To State A Plausible Claim And Failed To Plead Any Alleged Fraud With Particularity.

#### 1.     Introduction

Rules 12(b)(6) and 8(a) of the Federal Rules of Civil Procedure require the Relator to plead sufficient facts, as opposed to legal conclusions and speculation, to state a claim that is facially plausible.  In addition, because the Relator asserts claims of fraud pursuant to the FCA, Rule 9(b) of the Federal Rules of Civil Procedure requires the Relator to provide the "who, what, when, where, and how" of the alleged fraud.  The Relator fails in both regards.

As the consummate "insider" at MEP's PDPC facility where the alleged fraud occurred, and having already amended his complaint once after an additional year's investigation, the Relator should possess the facts to allege a plausible and detailed case if there were such a case to be made.  Instead, the Relator advances a multitude of generalities and legal conclusions unsupported by any detail, in an effort to create the illusion of plausibility and particularity.

Rules 12(b)(6), 8(a), and 9(b) do not permit the Relator to compel MEP to incur the substantial burdens and costs to defend its reputation against this sort of unsubstantiated attack.  More importantly, they do not afford the Relator the right to launch this type of action in hopes that discovery might reveal something more on which to proceed.  The Relator has had ample opportunity to plead the facts necessary to state a claim.  He has twice failed to do so and the Court should now dismiss the Amended Complaint with prejudice and without leave to amend.

2.      **The Relator Has Not Met His Burden Of Pleading A Plausible And Detailed Claim.**

      a.      **The Relator Has Not Pled A Plausible Claim As Required By Rules 12(b)(6) And 8(a).**

Rules 12(b)(6) and 8(a) require a plaintiff to plead enough facts, when considered in the light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States ex rel. Godfrey v. KBR, Inc.*, No. 08-1423, 2010 U.S. App. LEXIS 224, at *7 (4th Cir. Jan. 6, 2010) (quoting *Iqbal*, 129 S. Ct. at 1949)).

In *Twombly*, the Supreme Court held that a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp 235-36 (3d ed. 2004)). Moreover, the Court should not consider "unwarranted inferences, unreasonable conclusions, or arguments." *Twigg v. Triple Canopy, Inc.*, No. 1:10cv122 (JCC), 2010 U.S. Dist. LEXIS 53750, at *7 (E.D. Va. June 2, 2010) (citing *Nemet Chevrolet, Ltd. v. Consumeraffiars.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

The Supreme Court has articulated a two-pronged approach to evaluating the adequacy of a pleading to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1940-41; *Twigg*, 2010 U.S. Dist. LEXIS 53750, at *7. First, the evaluation of a claim's facial plausibility should "begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1940; *Twigg*, 2010 U.S. Dist. LEXIS 53750, at *7. Once stripped of conclusory allegations, "assuming the veracity of well-pleaded factual allegations, a court

must conduct a context-specific analysis drawing on its judicial experience and common sense and determine whether the factual allegations plausibly suggest an entitlement to relief." *Twigg*, 2010 U.S. Dist. LEXIS 53750, at *8 (quoting *Iqbal*, 129 S. Ct. at 1950) (internal quotations omitted). Here, the Relator was required to plead sufficient facts to allow a court to infer "more than the mere possibility of misconduct." *Nemet*, 591 F.3d at 256. This, the Relator has failed to do and his case should be dismissed.

### b.    The Relator Has Not Pled A Sufficiently Detailed Claim Of Fraud As Required By Rules 9(b) And 12(b)(6).

An alleged violation of the FCA is an averment of fraud, which requires a plaintiff to meet the heightened pleading standard of Rule 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) requires that the party alleging the false claim "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *United States ex rel. Davis v. Prince*, No. 1:08cv1244, 2010 U.S. Dist. LEXIS 66908 (E.D. Va. July 2, 2010). A failure to do so constitutes a failure to state a claim under Rule 12(b)(6). *Harrison*, 176 F.3d at 783 n.5.

The heightened standard in fraud cases is designed to put the defendant on notice of the claims made against it and to eliminate cases where a plaintiff hopes to learn facts through discovery that might support a claim. *Harrison*, 176 F.3d at 784; *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). A relator's complaint which relies on the potential of future discovery in lieu of "substantial prediscovery evidence" is inadequate under Rule 9(b) and should be dismissed. *Prince*, 2010 U.S. Dist. LEXIS 66908, at *10.

Under Rule 9(b), a plaintiff must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he

obtained thereby." *Wilson*, 525 F.3d at 379 (quoting *Harrison*, 176 F.3d at 784). "These facts are often 'referred to as the "who, what, when, where, and how" of the alleged fraud.'" *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). "Conclusory allegations will not satisfy the particularity requirement." *United States v. Gwinn*, No. 5:06-cv-00267, 2008 U.S. Dist. LEXIS 26361, at *31 (S.D. W.Va. Mar. 31, 2008) (citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)). Instead, the facts presented must be specific enough to inform the defendant of the fraud, so that they can defend against the allegation. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). The Court should dismiss this matter based on the Relator's failure to do so.

3.     **Count I Should Be Dismissed Because The Relator Fails To Assert Facts Sufficient To State A Claim Regarding Any Theory Of Liability.**

In Count I, the Relator alleges that MEP submitted multiple explicit and implicit false claims in violation of 31 U.S.C. § 3729(a)(1), which prohibits a person from knowingly presenting, or causing to be presented, to an officer or employee of the United States Government, a false or fraudulent claim for payment or approval.[1] (Am. Compl. ¶ 52). The "test for False Claims Act liability . . . is (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that

---

[1] The Relator also cites to the 2009 amendments to the FCA in the titles to Counts I through V, (Am. Compl. at 12, 13, 14), but does not otherwise refer to those provisions in the body of the Amended Complaint. During 2009 and 2010, Congress amended the FCA. *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat 1617, 1625 (2009) ("FERA"); Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1313, 124 Stat. 119, 184 (2010). The amended provisions became effective in May 2009 and do not apply retroactively to Counts I, III, IV, and V of this case. FERA § 4 ("The amendments made by this section shall take effect on the date of enactment of this Act [*i.e.,* May 20, 2009] and shall apply to conduct on or after the date of enactment."). Considering this matter was commenced on March 18, 2009, (Docket Entry 1) the pertinent conduct predated the 2009 legislation. *See also Graham Cnty. Soil & Water Dist v. United States ex rel Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010) (noting that 2010 amendments are not retroactive). Accordingly, MEP refers to the 1986 language of the FCA for Counts I, III, IV and V. MEP addresses Count II below.

caused the government to pay out money or to forfeit money due (i.e., that involved a claim)." *Harrison*, 176 F.3d at 788.   Stripped of conclusory and irrelevant allegations, the Amended Complaint fails to set forth a facially plausible suggestion that MEP submitted any false claims and fails to plead in sufficient detail to inform MEP what fraudulent acts it is to defend against.

> **a. The Claims Related To "Testing and Language Skill Deficiencies" Should Be Dismissed Because The Relator Fails To Allege Sufficient Particularized Facts To State A Plausible Claim For Relief.**

The Relator alleges that MEP systematically presented "explicit and implicit" false claims to the Government for linguists who did not meet the contractually mandated language proficiency standards.  (Am. Compl. ¶¶ 26-40).  However, in advancing his five theories of fraudulent claims, the Relator offers nothing but vague generalities and conclusions unsupported by any specific facts, all of which he should have possessed as the one responsible for language testing (Am. Compl. ¶ 25), and as to which he claims to have reported the specifics to his superiors.  (Am. Compl. ¶¶ 31, 33, 35, 37).

The Relator must provide the "factual enhancement" necessary to create a plausible belief that MEP presented a false claim as required by Rule 8(a).  *Iqbal*, 129 S. Ct. at 1949.  Time and again the Relator fails to allege "the time, place, and contents of the false representations," or "the identity of the person making the misrepresentations," as required by Rule 9(b).  *Wilson*, 525 F.3d at 379.  The Relator must state more than a method to defraud the Government; instead, he must state the underlying facts associated with the defendant's alleged fraud.  *United States ex rel. Goldstein v. Mill End Shops, Inc.*, No. JFM-01-239, 2002 U.S. Dist. LEXIS 19708, at *3 (D. Md. Oct. 8, 2002).

The Relator's handling of his first theory typifies the defect in all his claims.  In alleging that MEP falsely represented to the Government that failed linguists met the Contract's language

proficiency requirements, the only specific fact that the Relator alleges is an unidentified and unexplained spreadsheet attached as Exhibit B, which he cites for the proposition that 28 percent of the listed applicants failed oral proficiency testing. (Am. Compl. ¶ 28). Assuming it reflects what the Relator alleges, the document does nothing to establish his subsequent conclusory assertion that MEP misrepresented to the Government that these linguists met the Contract's requirements (Am. Compl. ¶ 28), or that MEP submitted a claim to the Government for any of these linguists on which it was paid.

The Relator fails to allege even one instance where MEP misrepresented to the Government that a linguist met the Contract's language requirements, much less when, where, or by whom such a representation was made. The Relator additionally fails to allege who invoiced for such linguists, when any such invoice was submitted, or that the Government paid on such an invoice. The cursory detail the Relator pleads concerning test results fails to provide any specifics about the alleged fraud.

The Relator's second theory that MEP, LLE, and Gracor utilized phone-based oral proficiency testing, besides lacking the required detail, fails to indicate fraud at all. (Am. Compl. ¶ 30). The Relator does not allege that the Contract required in-person testing or that MEP misrepresented to the Government that it conducted in-person testing. He merely complains that MEP failed to use what the Relator asserts to be the industry standard in-person testing and that might lead to potential fraud. Even assuming his assertion were true, the Relator has at best alleged a performance deficiency, not a false claim to the Government. *Wilson*, 525 F.3d at 377 (FCA does not apply to mere allegations of inefficient contract performance).

The Relator's third theory that MEP concocted a "ruse" to cheat the Government by allowing linguists who failed or cheated on a written language proficiency test to retake the exam until they achieved a passing grade is equally implausible and factually wanting. (Am. Compl. ¶

13

34). Once again, the Relator fails to identify any Contract provision that prohibited MEP from retesting a candidate, and fails to allege a single instance where a linguist failed or cheated on a test and was allowed to retake it even once much less multiple times. The Relator does not give any information about the who, what, where, when or how MEP deployed unqualified linguists or submitted a false claim to the Government in this regard.

The Relator's fourth theory that MEP, LLE, and Gracor falsified the test results of some unidentified number of linguists is equally implausible and devoid of specifics. (Am. Compl. ¶ 32). The Relator fails to allege a single instance where this occurred, fails to identify a single linguist who was deployed, fails to allege who at MEP was involved, and fails to identify when MEP invoiced or the Government paid for any such linguists.

The Relator's bald and unsupported fifth assertion that MEP performed no testing for a certain group of linguists in Afghanistan fails in all regards. The Relator provides no citation to the Contract or to any specific facts whatsoever to inform MEP or the Court about this accusation.

When stripped of conclusory and irrelevant allegations, the Relator fails to create a plausible inference that MEP is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949. This failure is more notable because the Relator professes an insider's "direct and independent knowledge" of the alleged fraud and claims to have reported it to his MEP superiors, but fails to provide the particularity necessary to satisfy Rule 9(b). This Court has held that, "'insiders privy to a fraud on the government should have adequate knowledge of the wrongdoing at issue [and] should be able to comply with Rule 9(b).'" *United States ex rel. Carter v. Halliburton Co.*, No. 1:08cv162, 2009 U.S. Dist. LEXIS 1936, at *10-11 (E.D. Va. Jan. 13, 2009) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

In lieu of the *specifics* about the alleged fraudulent conduct, the Relator advances conclusory allegations and irrelevant details. He fails to name a single MEP employee who engaged in improper conduct or who submitted a false claim to the Government, when or how any false claim was presented, or the amount of any false claim. Such gross deficiency in pleading should result in dismissal of the Relator's claims regarding language testing and language skills.

### b. The Claims Related To "Services Not Authorized by the Contract" Should Be Dismissed Because The Relator Fails To Allege Sufficient Particularized Facts To State A Plausible Claim For Relief.

The Relator alleges that MEP defrauded the Government by invoicing for unauthorized work performed under the DOMEX and DOCEX programs. (Am. Compl. ¶¶ 41-45). In the case of DOCEX, if all the facts alleged are taken as true, MEP assigned linguists to perform work for the Government, the linguists performed that work at a Government facility, and MEP subsequently invoiced for the work performed outside the scope of the Contract. In the case of DOMEX, the only additional fact that the Relator alleges is that MEP invoiced for eight hours of work when only two hours of work were performed. In both instances, although he was the Director where the DOMEX program was housed (Am. Compl. ¶¶ 24, 25, 42), the Relator fails to provide sufficient factual detail to state a plausible claim. He does not identify one linguist who worked fewer hours than MEP was authorized to charge, does not identify anyone at MEP who concealed or misrepresented anything about this issue, and does not identify when or how any such misrepresentation was made to the Government.

The Relator falls far short of presenting a plausible inference that MEP submitted a false claim to the Government. In *Harrison*, the Fourth Circuit upheld a district court's dismissal of a similar claim that a contractor billed for work outside the scope of its federal contract. The court

explained: "The [Government] was aware of the terms of the contract – it could have objected to the inclusion of . . . [the] costs if it had believed that such work was not authorized.  Harrison does not allege that WSRC tried to conceal the nature of the work.  Thus, Counts 3(a) and 3(b) do not involve any material falsity, if any falsity at all." *Harrison*, 176 F.3d at 789 (bracketed material added).  The Relator's allegations in this case are equally unavailing and should be dismissed.

> c. **The Claims Related To MEP's "Quality Control Program" Should Be Dismissed Because The Relator Relies On The Theory Of Implied Certification Which This Circuit Does Not Recognize And Fails To Allege Sufficient Particularized Facts To State A Plausible Claim For Relief.**

The Relator alleges that MEP defrauded the Government on claims it submitted by having erroneously and implicitly certified compliance with the requirement to have a Quality Control Program that included a requirement to document failed candidates.  (Am. Compl. ¶¶ 46-47).  The Relator alleges that MEP failed to implement such a program so that it could falsely bill the Government for unqualified linguist candidates.  (Am. Compl. ¶ 48).  Besides being based on a legal theory the Fourth Circuit does not recognize, the allegations fail to provide the particularity required to state a plausible claim that MEP submitted a false claim.

> i. **The Relator's Claim For False Certification Fails Because The Theory Of Implied Certification Is Not Recognized By The Fourth Circuit.**

The Relator alleges that MEP certified compliance with the contractual Quality Control Plan requirements of the Contract just by submitting claims to the Government, but does not allege that MEP made any express certification to that effect or that the Contract required such certification from MEP as a condition for payment.  Accordingly, the Relator necessarily relies on the theory of implied certification which is based upon the concept that a contractor implicitly certifies to compliance with all laws, regulations, and contract terms upon submission of any

claim.  John T. Boese, *Civil Claims And Qui Tam Actions*, at 2-139 (3rd ed. 2010).  Among its legal and practical defects, the theory is criticized for its effect of eliminating a relator's burden to establish that a defendant knowingly submitted a false claim.  *Id.*

The Fourth Circuit has twice had the opportunity to address the implied certification theory and declined to adopt it.  *United States ex rel. Herrera v. Danka Office Imaging Co.*, No. 03-1343, 2004 U.S. App. LEXIS 4825, at *9 n.3 (4th Cir. Mar. 15, 2004); *Harrison*, 176 F.3d at 787 n.8 (questioning but declining to rule on the viability of the theory); *see also Halliburton Co.*, 2009 U.S. Dist. LEXIS 63649, at *36 ("[Implied Certification] . . . has not been recognized in the Fourth Circuit, which has, in fact, expressed doubt as to whether implied certification liability can exist").  Nothing in the Relator's bald and unsupported allegations in this case merits adoption of a theory about which the Fourth Circuit has been so reticent.

ii.  **The Relator's Claim For False Certification Also Fails Because An Implied Certification Must Be Related To Funding.**

Assuming for the purposes of discussion that the Fourth Circuit were to recognize the theory of implied certification, the Relator's claim still should fail. Courts that have accepted the theory require that the alleged false certification either be a prerequisite for or related to receiving funds from the Government. *Herrera*, 2004 U.S. App. LEXIS 4825, at *8; *Harrison*, 176 F.3d at 787 n.8 & 793.  Relator does not allege that MEP's supposed certification was a prerequisite for payment or related to receiving funds from the Government under the Contract. Rather, he alleges that MEP's failure to implement the program was a scheme to enable MEP to falsely bill the Government for unqualified linguists. (Am. Compl. ¶¶ 46-48).  Having failed to allege how the quality control program is related to the funding provided by the United States, the implied certification fails.

### iii. The Quality Control Claim Is Not Pled With Particularity Because The Relator Does Not Tie The Quality Control Program To A False Claim.

The Relator fails to allege any facts that tie MEP's supposed failure to provide a quality control program to a single claim that was allegedly presented to the Government. Accordingly, he does not create a plausible inference that MEP presented a false claim. In *United States ex rel. Godfrey v. KBR, Inc.*, the plaintiff alleged that KBR submitted fraudulent invoices under its contract to supply dining services to various sites in Iraq by inflating headcounts for meals served. 2010 U.S. App. LEXIS 224, at *9. The Court rejected the theory and affirmed dismissal of the complaint, because plaintiff failed "to allege that the relevant contracts made payment dependent on the number of meals actually served." *Id.* at *10. A false headcount in an invoice would not necessarily result in a false claim for overpayment if payment was based on another metric. *Id.* at *9-10.

Here, the Relator fails to allege facts that create the required nexus between the contractual term he alleges was breached and any subsequent claim presented to the Government. Considering he is not asserting that MEP billed for a quality control plan it did not deliver, the Relator fails to particularize how MEP's alleged failure to provide a quality control plan resulted in the presentment of a false claim to the Government for linguist services. At best, the Relator questions MEP's performance of a contractual duty, which "is precisely the sort of claim that courts have determined not to be a false statement under the FCA." *Wilson*, 525 F.3d at 377. The FCA does not allow a *qui tam* relator to "shoehorn what is, in essence, a breach of contract action into a claim that is cognizable under the False Claims Act." *Wilson*, 525 F.3d at 373. Extending the FCA to simple breach of contract claims would greatly increase the cost of business for contractors and the Government and would discourage companies from providing services and ingenuity to fill the needs of the United States. *United States ex rel. Owens v. First*

18

*Kuwaiti General Trading & Contracting Co.*, No. 09-1899, 2010 U.S. App. LEXIS 14610, at *25 (4th Cir. July 16, 2010). The Relator's Quality Control allegation should be dismissed as well.

> **d. The Claims Related To Allegedly Unauthorized "Per Diem" Charges Should Be Dismissed Because The Relator Alleges Insufficient Particularized Facts To State A Plausible Claim For Relief.**

The Relator claims that MEP submitted false claims for per diem payments that were not allowed under the Contract. (Am. Compl. ¶¶ 49-50). The only specifics the Relator includes is a list of unspecified origin that he alleges includes some unauthorized per diem payment requests. (Am. Compl. ¶ 49 & Ex. C). The Relator fails to provide any particularized facts about the who, what, where, when, or how MEP carried out this alleged fraud. He does not even cite the term in the Contract upon which he bases his legal conclusion that the per diem charges were not authorized. Moreover, he draws no nexus between the facts pled and the alleged fraudulent conduct. The Relator's broad and conclusory allegations, unsupported by even a shred of required factual support, fail to state a claim and should be dismissed.

In summary, all of the Relator's allegations in Count I suffer from the same fatal defect. In each and every instance, he fails to satisfy the general standard for pleading a plausible claim under Rule 8(a) as well as the heightened standard under Rule 9(b). Accordingly, all of Count I should be dismissed pursuant to Rule 12(b)(6).

> **4.      Count II Should Be Dismissed For Failure To State A Claim Because The Relator Fails To Allege Sufficient Facts To Establish A Plausible Claim As To The Creation Or Use Of Any Records Or Statements To Induce The Payment Of A False Claim.**

In Count II, the Relator alleges that MEP made or used false records or statements to get a false claim paid in violation of 31 U.S.C. § 3729(a)(2). Section 3729(a)(2) prohibits a person from knowingly making, using, or causing to be made or used, a false record or statement to get

a false or fraudulent claim paid or approved by the Government.[2]   The distinction between claims under Section 3729(a)(1) and Section 3729(a)(2) is that to succeed under the latter section a defendant must have created a false record or statement in support of a false claim.   Without an underlying false claim, there cannot be a claim under Section 3729(a)(2).

The Relator's case under Section 3729(a)(2) is deficient on at least three grounds.   First, as MEP establishes above, the Relator has failed to plead a cognizable false claim under Section 3729(a)(1).   Section 3729(a)(2), by its terms, depends on there being a false claim as to which the alleged false documents furnish support, and without an underlying false claim, the Relator cannot successfully plead that MEP created a false statement or record in support of a false claim under 3729(a)(2).

Second, Section 3729(a)(2), by its terms, also requires that the false record or statement be used "to get a false or fraudulent claim paid or approved."   The Relator does not allege that any record or statement was created or used for such a purpose.   *See* John T. Boese, *Civil Claims And Qui Tam Actions*, at 2-32 (3rd ed. 2010).

---

[2] As distinguished from the FCA provisions pertinent to Counts I, III, IV, and V,  FERA sought to make the revisions to Section 3729(a)(2) reflected in Section 3729(a)(1)(B) retroactive to all "claims" pending on June 7, 2008.  Pub. L. No. 111-21, 123 Stat. 1617, 1625 (codified as a note following 31 U.S.C. § 3729).   Besides the constitutional issues associated with retroactive application of a punitive statute, *see* U.S. Const. Art. 1, § 9, cl. 3 ("No . . . ex post facto Law shall be passed"), Amends V & XIV (due process clauses); *see generally*, T. Boese, *Civil Claims And Qui Tam Actions*, at 1-76 (3rd ed. 2010) (noting constitutional and practical concerns with retroactive application), it is unclear whether the provision applies to the matter in that the Relator (i) does not allege that there were any claims pending as of June 7, 2008 and (ii) makes no mention of Section 3729(a)(1)(B) other than in the title of Count II.   Like the Relator, MEP refers in this brief exclusively to the 1986 language in Section 3729(a)(2).   In any event, the modifications to Section 3729(a)(2) reflected in Section 3729(a)(1)(B) would make no difference to the outcome of this case considering the Relator's pleading failures.   The new language penalizes a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. . . ." 31 U.S.C. § 3729(a)(1)(B).   For the same reasons as stated in the text, the Relator fails to state a claim even under Section 3729(a)(1)(B).

Third, even assuming the Relator had properly pled a false claim under Section 3729(a)(1), his claim still would fail because he does not allege a single statement or record that MEP made, used, or caused to be made or used in connection with or for the purpose of inducing payment on an alleged fraudulent claim. Although the Relator generally alludes to all sorts of misconduct, he does not set forth sufficient facts from which a Court could make a plausible inference that MEP used any false or fraudulent records or statements to support a false claim. The only documents to which the Relator makes any reference are the two lists of linguists set forth as Exhibits B and C to the Amended Complaint. The Relator does not explain the source or origin of these documents or allege that they were submitted to the Government. More importantly, he does not allege they are false records, but instead relies on their accuracy for his own allegations. Under the circumstances, Count II should be dismissed for failure to state a plausible claim and for failure to plead with particularity pursuant to Rules 8(a), 9(b), and 12(b)(6).

5.     **Count III Should Be Dismissed Because The Relator Fails To Allege Sufficient Facts To State A Plausible Claim For Conspiracy.**

In Count III, Relator alleges broadly that MEP, LLE, and Gracor conspired to defraud the Government by getting false claims allowed or paid in violation of 31 U.S.C. § 3729(a)(3).  To establish a conspiracy claim, the Relator must establish that there was (1) a claim to the United States; (2) the claim was false or fraudulent; (3) there was payment or approval by the government; (4) there was an agreement to submit the false claim; (5) there was an act in furtherance of the agreement; and (6) there was an intent to defraud. *See generally* T. Boese, *Civil Claims And Qui Tam Actions*, § 2.01[E] at 2-35 – 2.37 (3rd ed. 2010) (describing elements); *accord. Godfrey*, 2010 U.S. App. LEXIS 224, at *15-16. The Relator fails to state a plausible claim or sufficiently detailed facts as to any of the elements.

A complaint that alleges conspiracy under the FCA must meet the heightened pleading standard of Rule 9(b). *Godfrey*, 2010 U.S. App. LEXIS 224, at *15; *Harrison*, 176 F.3d at 790. The intent necessary to allege conspiracy must also be pled with the heightened particularity of Rule 9(b). *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 208 (E.D. Tx. 1998) (holding that the conspiracy provisions of the FCA ". . . require the specific intent to defraud, unlike the other provisions which merely require knowledge"). Moreover, "[a] complaint must make specific allegations against each individual defendant rather than collective allegations against 'each of the above-named Defendants,' since one of the main rationales behind Rule 9(b)'s particularity requirement is to 'guarantee all defendants sufficient information to allow for preparation of a response.'" *United States ex rel. Bender v. N. Am. Telecomms., Inc.*, 686 F. Supp. 2d 46, 50 (D.D.C. 2010) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)).

Relator's case under Count III fails for multiple reasons. First, having failed to successfully plead a false claim under Count I, there is no false or fraudulent claim as to which there could be a conspiracy. Second, the Relator has pled no facts regarding the relationship among MEP, LLE, and Gracor that would support a conspiratorial meeting of the minds of any kind much less an intent to submit a false claim. The Relator alleges generally and without any specifics that MEP conspired with LLE and Gracor by: (i) failing to adequately test the language proficiency of linguist candidates recruited and deployed; (ii) using phone-based instead of in-person oral proficiency testing of candidates; (iii) falsifying test results; and (iv) allowing linguists who failed or cheated to retake language tests. (Am. Compl. ¶¶ 29, 30, 32, 34).

The Relator alleges no detail regarding MEP or any other individual defendant as to how any one or more of them came together, defined an alleged scheme, decided to present false claims to the Government, created false claims with the intent to defraud the Government, or

carried out the alleged conspiracy.  Other than the conclusory allegation of a "conspiracy" the Relator fails to allege the essential facts to establish an agreement between the defendants or what each defendant agreed to do.

As defendants LLE and Gracor equally establish in their memoranda in support of their respective motions to dismiss, the Relator fails to plead in a plausible manner how MEP "conspired" with either LLE or Gracor; nor has he alleged facts sufficient for MEP to ascertain how to defend against his vague allegations.  *See Twombly*, 550 U.S. at 554-55 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").  Because the Relator fails to allege any facts to support an inference that MEP engaged in a conspiracy with LLE or Gracor to defraud the United States, Count III fails to satisfy the pleading requirements of *Iqbal* or Rule 9(b) and should be dismissed.

### 6. Count IV Should Be Dismissed Because The Relator Fails To Make Any Allegations That Relate To A Reverse False Claims Act Violation.

The Relator alleges in Count IV that MEP violated 31 U.S.C. § 3729(a)(7) by making false records and statements to conceal, avoid, and/or decrease an obligation to repay money to the Government.  (Am. Compl. ¶¶ 60-61).  A violation of Section 3729(a)(7), referred to as a "reverse false claim," differs from claims under Sections 3729(a)(1), (a)(2), and (a)(3) because a reverse false claim is made to *avoid* the repayment of money already received by a defendant rather than to *induce* payment from the Government.

The Relator fails to address this distinction and makes no allegations that relate to a reverse false claim.  Specifically, the Relator provides no instance of an action taken, a document created, or a statement or representation made by MEP or any other defendant to conceal or avoid repayment of money to the Government.  Instead, the Relator alleges that MEP defrauded the Government and, as a consequence, committed a reverse FCA violation by not repaying the

Government some unidentified amount of money.  Under the Relator's logic, any violation of Section 3729(a)(1), (a) (2), or (a)(3) would automatically result in a reverse false claim and thus render meaningless the distinction between sections of the FCA.

A reverse false claim only exists where a defendant has "an obligation to pay" that the defendant conceals, avoids, or decreases. 31 U.S.C. § 3729(a)(7).  That "obligation" cannot be potential or contingent, but must be a fixed and present duty to pay that is created by "a statute, regulation, contract, judgment, or acknowledgment of indebtedness." *United States v. Quick Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997); *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384 (5th Cir. 2008).  The Relator does not allege that MEP had a present and fixed obligation to pay the Government, much less that MEP sought to conceal or decrease any such obligation.  Additionally, the Relator does not allege that the Contract contained any term that would create such an obligation.

Ultimately, the Relator's allegation is completely devoid of the facts necessary to plead a violation of 31 U.S.C. § 3729(a)(7) or create a plausible inference that such a violation occurred. Accordingly, it should be dismissed.

    7.    **Count V Should Be Dismissed Because The Relator Did Not Allege Facts Sufficient To Establish A Claim For Retaliation.**

The Relator alleges in Count V that he was retaliated against and ultimately dismissed from MEP for engaging in protected conduct, in violation of 31 U.S.C. § 3730(h).  The FCA protects an employee against unlawful retaliation and termination based upon his efforts in connection with a pending or contemplated FCA litigation of which the employer is aware.

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . by his or her employer because of lawful acts done by the employee on behalf of the employee  . . . including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief.

31 U.S.C. §3730 (h).

The Fourth Circuit has "extracted three elements from section 3730(h) . . .: An employee must prove that (1) he took acts in furtherance of a qui tam suit [i.e. engaged in protected activity]; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts." *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 866 (4th Cir. 1999) (internal citations omitted); *see also United States ex rel. Martinez v. Virginia Urology Center,* No. 3:09-CV-442, 2010 U.S. Dist. LEXIS 77078, at *17 (E.D. Va. July 29, 2010); *Mann v. Heckler,* 639 F. Supp. 2d 619, 626 (E.D. Va. 2009).

When pleading a claim for retaliation under the FCA, a relator must allege more than a "'threadbare' recital of the elements." *Prince,* 2010 U.S. Dist LEXIS 66908, at *11 (quoting *Iqbal,* 129 S. Ct. at 1950). He must allege facts sufficient to meet the plausibility standard articulated by *Twombly* and *Iqbal*. *Twigg,* 2010 U.S. Dist. LEXIS 53750 at *17. To establish a claim for retaliation, Relator must show that the "protected activity" in which he engaged is more than investigating an employer's potentially illegal actions. *See Martinez,* 2010 U.S. Dist. LEXIS 77078, at *18. Rather, "protected activity" is suggesting an employer engage legal counsel; mentioning the possibility of litigation; or threatening to file an FCA Action. *Id.*; *Mann,* 639 F. Supp. 2d at 627.

In *Martinez,* this court "focused on whether an employee specifically warned an employer of the possibility of a civil action, as opposed to merely highlighting illegal behavior." 2010 U.S. Dist LEXIS 77078, at *18. The Court held that relator's "consistent opposition to ostensibly fraudulent billing practices" neither rose to the level of protected activity recognized by the FCA nor was made in relation to FCA litigation. *Id.* Thus, the relator's retaliation claim failed.

Here, the Relator's retaliation claim fails for the same reasons as in *Martinez*. The Relator alleges that "MEP terminated Relator . . . after his continued complaints about Defendant MEP's false billing practices" (Am. Compl. ¶ 67), which is in accord with the assertions he made elsewhere in the Amended Complaint. (Am. Compl. ¶¶ 31 (reported allegedly deficient oral proficiency testing); 37 (reported MEP's alleged failure to perform language testing on certain linguists in Afghanistan); 33 (reported allegedly falsified test results); and 35 (reported alleged instances of cheating on written tests)). The Relator effectively admits that he did not threaten MEP prior to his departure with litigation or an FCA case. (Am. Compl. ¶ 66) ("MEP knew or should have known that Relator's activities . . . were in connection with this False Claims Act action."). As held in *Martinez* and *Mann*, drawing attention to potentially false practices does not rise to the level of protected activity required by the FCA. As such, the Relator pleads but the threadbare elements of a retaliation claim without alleging facts from which a court could infer the MEP engaged in unlawful retaliatory conduct. Thus, Count V should be dismissed.

**B.      Paragraphs 5 And 6 Of The Prayer For Relief Should Be Dismissed For Lack Of Standing And For Failure To State A Claim.**

Although he does not assert them in a formal count, in Paragraphs 5 and 6 of the Prayer for Relief the Relator requests that "[d]efendants be enjoined from concealing, removing, encumbering or disposing of assets that may be required to pay the civil monetary penalties imposed by the Court" (Am. Compl., Prayer for Relief ¶ 5) and that "[d]efendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct." (Am. Compl., Prayer for Relief ¶ 6). The requested relief is unavailable to the Relator under the FCA and these claims should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(1), for lack of subject matter jurisdiction, or Fed. R. Civ. P. 12(b)(6), for the Relator's failure to state a claim.

The FCA permits a private citizen to bring a civil action for violation of the FCA on behalf of the United States. 31 U.S.C. § 3730(b)(1). A relator is limited to suing through the FCA and is not empowered to avail himself of other common law remedies against a defendant. *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000). *See generally* John T. Boese, *Civil Claims And Qui Tam Actions*, at 2-308.2 (3rd ed. 2010) (". . . alternative common law causes of action are not available to *qui tam* relators, who are empowered to sue on behalf of the government through the FCA only").

The Relator is not entitled to seek recovery for unjust enrichment. *United States ex. rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 37 (D.D.C. 2003) (dismissing relators' claim for unjust enrichment because "[r]elators have no standing to assert these causes of action on behalf of the United States"); *see also United States ex rel. Lee v. Corinthian Colleges*, No. CV 07-1984 PSG (MANx), 2009 U.S. Dist. LEXIS 120462, at *14 (C.D. Cal. Dec. 4, 2009) (relator lacks standing to pursue unjust enrichment claims "because [he] did not personally suffer an injury as a result of [MEP's] alleged misconduct"); *United States ex. rel. Phipps v. Comprehensive Community Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y. 2001) (dismissing relators' claim for unjust enrichment for lack of standing).

The Relator is not entitled to seek injunctive relief. *Robbins on behalf of United States v. Desnick*, No. 90 C 2371, 1991 U.S. Dist. LEXIS 418, at *8 (N.D. Ill. Jan. 10, 1991) ("[a]lthough the FCA imposes a penalty on persons filing false claims against the government, the statute does not expressly provide for injunctive relief. Robbins fails to cite any cases where injunctive relief was granted for FCA violations"); *see also United States ex rel. The Saint Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co.*, 451 F.3d 44, 54 (2d Cir. 2006) (dismissing *qui tam* plaintiff's claim for injunctive and declaratory relief under the Indian Gaming Regulatory Act,

on grounds that, "[a]bsent specific authority to sue for an injunction . . . on behalf of the United States, private citizens are not so empowered.").

The Relator is not entitled to seek disgorgement of MEP's assets. *United States ex rel. Taylor v. Gabelli*, 03 Civ. 8762 (PAC), 2005 U.S. Dist. LEXIS 26821, at *50-51 (S.D.N.Y. Nov. 3, 2005) ("The False Claims Act makes no provision whatsoever for recovery of restitutionary remedies. Nor is any support for such relief to be found in the cases interpreting the FCA or its legislative history. Thus the False Claims Act does not permit the Relator to disgorge defendants' profits.").

Absent any right to the relief he seeks, and because he utterly fails to plead any factual basis for such relief even if it were available to him, the Court should dismiss Paragraphs 5 and 6 of the Prayer for Relief pursuant to Rule 12(b)(1) and Rule 12(b)(6).

## III.  CONCLUSION

The severe consequences and disruptions that befall a company that is accused of an FCA violation mandate that the pleading requirements applicable to such actions be enforced to bring unwarranted actions to a rapid close with minimum expense and disruption to the defendant. As the Fourth Circuit recognized in *Harrison*, Rule 9(b) has four purposes: (1) to ensure that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of; (2) to protect defendants from frivolous suits; (3) to eliminate fraud actions on which all of the facts are learned in discovery; and (4) to protect defendants from harm to their goodwill and reputation. 176 F.3d at 784.

In this instance, the Relator is a consummate insider who should have had all the detailed facts necessary to satisfy *Iqbal*, *Twombly*, and Rules 8(a) and 9(b). His complete failure, after two attempts, to allege facts on which a plausible inference of misconduct could be inferred or

that would put MEP on notice of what misconduct he is truly alleging suggests that there is no case to be had. He should not be given a third bite at the apple.

For the reasons stated above, defendant Mission Essential Personnel, LLC respectfully requests that the Court enter an Order:

(1) Granting MEP's Motion to Dismiss;

(2) Dismissing the Amended Complaint in its entirety with prejudice;

(3) Awarding MEP its costs,

(4) Awarding MEP its reasonable attorneys fees; and

(5) Granting such other, further, and additional relief as is appropriate.

Respectfully submitted,

Date: August 20, 2010                      /s/Anthony H. Anikeeff
                                   Anthony H. Anikeeff (VSB No. 20338)
                                   WILLIAMS MULLEN PC
                                   8300 Greensboro Drive
                                   Suite 8300
                                   McLean, VA 22102
                                   Tel: 703-760-5200
                                   Fax: 703-748-0244
                                   Email: aanikeeff@williamsmullen.com

                                           /s/Adam G. Casagrande
                                   Adam G. Casagrande (VSB No. 46726)
                                   WILLIAMS MULLEN PC
                                   1700 Dominion Tower
                                   999 Waterside Drive
                                   Norfolk, VA 23514-3460
                                   Tel: 757-622-3366
                                   Fax: 757-629-0660
                                   Email: acasagrande@williamsmullen.com
                                   *Attorneys for Defendant Mission Essential*
                                   *Personnel, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2010, I electronically filed the forgoing documents with the Clerk of the Court using the CM/CF system, which will then send a notification of such filing (NEF) to the following:

Mark Hanna, Esq. (VSB no. 45442)
Murphy Anderson PLLC
1701 K Street, NW, Suite 210
Washington, DC 20006
Tel: (202) 223-2620
Fax: (202) 223-8651
Email: mhanna@murphypllc.com
*Attorney for Plaintiff*

Clinton R. Shaw, Jr., Esq. (VSB No. 37498)
Jordan, Coyne & Savits, LLP
1100 Connecticut Avenue, NW, Suite 600
Washington, DC 20036
Tel: (202) 496-2824
Fax: (202) 496-2800
Email: c.shaw@jocs-law.com
*Attorney for Defendant Ceiba Enterprises, Inc.*

Maurice Bellan, Esq. (Admitted *pro hac vice*)
Jackson D. Toof, Esq. (VSB No. 48842)
Arent Fox, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 857-6000
Fax: (202) 857-6395
Email: bellan.maurice@arentfox.com
        toof.jackson@arentfox.com
*Attorneys for Language Learning Enterprises, Inc.*

Gerald J. Mene, Assistant United States Attorney
Monica L. Moore, Assistant United States Attorney
United States Attorney's Office
Justin W. Williams US Attorney Building
2100 Jamieson Ave
Alexandria, VA 22314
Tel: (703) 299-3700
Email: gerard.mene@usdoj.gov
        monika.moore@usdoj.gov
*Attorneys for the United States of America*

And I further certify that I will send the document via electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(E) to the following non-filing users:

Scott Newar, Esq.
700 Louisiana, 25th Floor
Houston, Texas 77002
Tel: (713) 220-9155
Fax: (713) 223-9319
Email: newar@newarlaw.com
*Attorney for Plaintiff*

And

Ann Lugbill, Esq.
Murphy Anderson PLLC
2406 Auburn Avenue
Cincinnati, OH 45219
Tel: (513) 784-1280
Fax: (513) 784-1449
Email: alugbill@murphypllc.com
*Attorney for Plaintiff*

                                            /s/Anthony H. Anikeeff
                                         Anthony H. Anikeeff, Esq.
                                    *Attorney for Mission Essential Personnel*